CHANDLER, *Adm'r, v.* BATCHELDER & *a.*

Upon a sufficient bond being given by a residuary legatee for the benefit of other legatees entitled to security, it was *held*, under the circumstances of the case, that property would be properly conveyed by the executor to the residuary legatee, without a decision of the question whether an interest of another legatee was an estate or a power.

BILL IN EQUITY, by the administrator of Mary E. Elliot, for instructions as to his duty under her will dated September 4, 1878, and a codicil dated December 29, 1879.

[Copy of the will.]

If my beloved mother, Mrs. Mary Batchelder, should survive me, I authorize her to take and dispose of, as she may see fit, by will or otherwise, the use and income of all my estate during her life, and if, contrary to my expectation, the same shall be insufficient for her ample and comfortable support and a Christian burial and the erection of a suitable monument at her grave, I direct my executor or administrator to appropriate so much of the principal of my estate, from time to time, as shall be necessary for such purposes.   Subject to such right of disposal and of support, etc., all the estate which I may have at my decease after the payment of my just debts and expenses of administration and the erection of a suitable monument at my grave in the lot hereinafter mentioned, I give, bequeath, and devise as follows, to wit:—

1st. To the First Congregational Society in said Manchester, my house and land on Beech street as a parsonage for the use of the pastor for the time being and from time to time of the First Congregational Church (usually called the Hanover-street church) of which I am a member.

2nd. To said church two thousand dollars, the income of which to be expended for the benefit of the poor of said church.

3rd. To the city of Manchester, two thousand dollars, to be securely invested and the annual income thereof to be spent in the purchase of medical books and publications to be kept in the city public library, but for the special benefit of the resident physicians and surgeons of said city, whom, so far as practicable, I desire the trustees of said library to consult in reference to purchases to be made and the proper regulations as to the use, in order to make this bequest most beneficial to the profession of which my late husband was an honored member.

4th. To my cousin Ann Maria Moore, wife of Samuel S. Moore, one thousand dollars for and during her life, and after her death the principal to her son, Albert Moore, for life, and after his death to his children, if any, but if he die without leaving children living at his death, then said principal to go to the trustees hereinafter mentioned.

5th. The portrait of my first husband to his brother, Charles Harvey, or, in case of his death, to his heirs.

6th. All the remainder of my estate of every description for the establishment and maintenance of a hospital at said Manchester, to be known as the Elliot Hospital, but hereby charging upon such remainder the keeping in suitable repair the lot in the Valley Cemetery where my first husband, John M. Harvey, and my child are interred and where I wish to be buried. It is my will that said last-mentioned trust for a hospital be administered by eight trustees and their successors, and that they become incorporated. The mayor of the city and the president of the common council for the time being shall be *ex-officio* trustees. The other trustees shall be chosen by ballot by the following churches in said city, one by each church, and minors not voting, to wit: The Hanover-street Congregational Church, the Franklin-street Congregational Church, St. Paul's Methodist Episcopal Church, the First Baptist Church, now on Concord street, the Pine-street Free-will Baptist Church, and Episcopal Church now on Lowell street, known as Grace Church, and all vacancies to be filled in the same way, whether for the full or the remnant of an unexpired term. After the first election, said trustees (except when chosen for an unexpired term) shall be elected for six years, one being chosen each year. The first election by said churches shall be in the order above stated for one, two, three, four, five, and six years, respectively, from one year after my decease. I hope that none of said churches will decline to elect a trustee as provided by this will, but if in any instance there should be a refusal or neglect to so elect, or if any of said churches become extinct, then the trustees chosen by the churches that do elect are hereby authorized and requested to fill the vacancy, conforming as far as may be to the rules before given.

As soon as said trustees shall have been chosen and the board is full, my executor or administrator is hereby authorized to convey to said trustees all the remainder aforesaid.   Five trustees, a majority of said board, shall be a quorum for the transaction of business.   Said board of trustees may adopt a constitution and by-laws and rules and regulations for the management of the trust, and constitute officers, committees, agents and sub-agents and servants, in furtherance of the charitable, humane and pious objects of the institution, and from the mode of selection, I have confidence that said trustees will faithfully and wisely administer the trust, and thereby induce others to largely contribute to the funds of the hospital, and make it a great and lasting blessing to this city.   In disposing of applications for admission to the hospital, it is my will that preference be given to residents of this city, and to Protestants or non-Catholics.

[Copy of the codicil.]

It having come to my knowledge that the subscriptions for the new church (retaining the whole lot), for which I have felt a great interest, are insufficient and will leave a considerable debt, I revoke the bequest of two thousand dollars to the First Congregational Church in my will of September 4th, 1878, and I give to the First Congregational Society in Manchester, with which said church is connected, the sum of two thousand dollars, to be paid to said society as soon after my decease as its whole indebtedness shall be reduced to that sum, so that by the application of this bequest for that purpose (which I hereby direct) the whole debt of the society will be extinguished.

The testatrix died March 20, 1880.   The will and codicil were proved and allowed in common form, and the plaintiff was appointed administrator with the will annexed, and gave bond.   May 25, 1880, the will and codicil were proved in solemn form.   By amendment of the bill, the trustees of the hospital were joined as defendants; and since the case was reserved, they have been incorporated under the name of "The Elliot Hospital of the City of Manchester."   Laws 1881, *c.* 178.

*Clough & Clark,* for the plaintiff.

*C. R. Morrison,* for Elliot Hospital.   Mrs. Elliot's property came to her upon a division of Mr. Elliot's estate, before the execution of her will.   She is presumed to have understood the situation and circumstances of her family and property.   She had no child, or brother, or sister.   Mrs. Batchelder, the heir at law, had lived with her for many years.   She was about eighty, with a constitution that might last for many years, but a diligent worker, frugal and simple in her wants, so that the income of the property

would be considerably more than sufficient for her support, unless something unexpected should occur. The property left was the homestead on Beech street, appraised in the inventory at $8,000, land and buildings on Chestnut street occupied by tenants at will from month to month, appraised at $10,500, a vacant lot on Lowell street at $1,000, furniture of every description in the dwelling-house on Beech street, where she and her mother were living together, and notes, bonds, stocks, etc., all amounting to $42,191.56, exclusive of real estate.

If the income should prove insufficient for her mother, it would be "contrary" to her "expectation;" and if it should become necessary to appropriate any of the principal to her support, the personal estate would be first applied (*Perry* v. *Hale*, 44 N. H. 363), so that the sale of real estate for that object is a possible, but an exceedingly remote, contingency. There is a direction to sell real estate if the contingency shall happen; and there is an authority to convey real as well as personal property to the hospital. But do such direction and authority vest any estate in the administrator? "A power when conferred by will is a bare authority derived from the will. It is not an estate, and has none of the elements of an estate." *Burleigh* v. *Clough*, 52 N. H. 267, 271. "A devise that executors or others may sell, is always a naked power." Clance, Powers, 52, 53; *Bloomer* v. *Waldron*, 3 Hill 361, 364; 4 Kent Com. 322. And so of a devise that executors may sell in their discretion. N. H. Dig. 272, *ss.* 49–56; 1 Red. Wills 598, 599. And there can be no distinction between an authority to sell, conferred as a power, and a direction to sell, there not being in the one case more than in the other any grant of an estate to the executor. "There appears to be a well settled distinction between a devise of land to executors to sell, and a devise that executors shall sell, or that land shall be sold by them. A devise of the first description gives a power coupled with an interest, and the estate passes to the executors; but the latter are instances of a naked power." *Fay* v. *Fay*, 1 Cush. 93. "Where a man directs his executors to sell his lands, this is but a bare authority without an interest, for the land in the mean time descends to the heir at law, who, until the sale, is entitled to the profits." *Gregg* v. *Currier*, 36 N. H. 200, 203. The will uses language appropriate, and only appropriate, to the grant of a naked power; and until *M'Afee* v. *Gilmore*, 4 N. H. 391, *Dexter* v. *Sullivan*, 34 N. H. 478, *Gregg* v. *Currier*, and *Burleigh* v. *Clough* in our own state, and a multitude of authorities elsewhere, are overruled, the administrator has no estate in the land.

Has Mrs. Batchelder an estate? As to all the other objects of the testatrix's bounty, the language is, "I give, bequeath, and devise," but as to her, "I authorize." Was this accidental? Did the attorney who drew the will know the distinction between an estate and a power? And whether he did or not, if it was intended

to give her a life estate, how is the wording of the will to be accounted for? If she took a life estate, she might sell it improvidently, and waste or lose the proceeds. If she took a life estate, the income not disposed of by will or otherwise in her lifetime would go to remote heirs. If she took but a bare authority, the income not used or disposed of would go to the hospital. If she were to live several years, the sum not needed for her comfort would amount to several thousand dollars, so far as could be reasonably anticipated.    Mrs. Elliot and her legal adviser must have understood the probable excess of income over her wants; and if with this knowledge it was her will that her mother should have a life estate, the terms of the will are most unaccountable.    On the other hand, if she intended to give a bare authority, although quite unrestricted in its scope, and this was known to the attorney who drew the will, what words would the court suggest to express that intention?    The words he did use, "I authorize her," are the words used by him in his Probate Directory, *pp.* 45, 46, to confer a naked power.    He did not say "I give," but "I authorize."    If there was in terms no gift of an estate, and nothing indicating a purpose to grant an estate, but, on the contrary, appropriate words to confer a power as distinguished from an estate, was it necessary to affix a label " This is a power, and not an estate"?    It was not anticipated that so much property would be administered without the aid of some competent lawyer.    The words "I authorize her to take and dispose of as she may see fit, by will or otherwise, the use and income of all my estate during her life," are to be taken distributively (*Fay* v. *Fay*, 1 Cush. 106), and are fit words applied to their proper subject.    She would not be expected to derive an "income" from the family Bible, or the portrait, or from any of the many choice or convenient furnishings of her home; but she might use them, and when she had done with them they would be needed in the hospital.    She might use the whole or any part of the real estate for a longer or a shorter time, and whenever she chose, but she could not "dispose of" such use "by will," for it was only given to her during her life.    Or instead of using the real estate, she might derive an "income" from it.    On the other hand, she could not "use" a note, or bond, or stock in a corporation, but she could derive an income from them, and this income she could "take and dispose of" "by will or otherwise."    Any use of property capable of use is necessarily a present use; and income cannot be taken until it has accrued.    One cannot take what is not *in esse.* She cannot change the whole character of the will, and convert a naked power into a present life estate, by a single act of election. This might in a great measure defeat the object in view in withholding from her a life estate.

The direction that the executor, if it become necessary, shall "from time to time" appropriate of the principal for her support, manifestly presupposes that she cannot take or dispose of the

income before it accrues. The power to take and dispose of is a continuing power, to be executed as the income accrues. She cannot anticipate it. If she could, she might give away the whole income by anticipation, and be supported from the principal the rest of her life, or else be left in utter destitution. *French* v. *Hatch*, 28 N. H. 331; Dig. 282, *s.* 202. The fact that the power may be considered in some sense a general power does not change its character and make it an estate. It exists only as a power, technically so called. In a case where such a power was superadded to a grant in terms of a life estate, our court said,—"A general power of disposition does not necessarily imply ownership. In fact, the existence of such a power, as a technical power, excludes the idea of an absolute fee simple in the party who possesses the power." *Eaton* v. *Straw*, 18 N. H. 320, 331, cited with approval in *Burleigh* v. *Clough*, 52 N. H. 272. "Authorizing a party to create a charge upon an estate if he pleases, does not of itself create one, nor give him any interest in it." *Johnson* v. *Cushing*, 15 N. H. 298, 308. "A power to one to sell for his own benefit gives him no estate or interest." *Hunt* v. *Rousmanier*, 8 Wheat. 174; 2 Washb. R. P. 324.

An examination of Mrs. Elliot's will in the light of approved authorities, we trust will show that for reasons deemed important not an estate of any kind was given, but instead a bare authority to take, in order that so much as should not be taken and disposed of by Mrs. Batchelder should go to the hospital; and also that this authority is a continuing power, to be executed from time to time, and not by a single election in anticipation of income. It is neither an absolute life estate in her, nor a life estate at her election, but a naked power, and subject also to the authority granted to the administrator to dispose of a portion or the whole of the principal, in the remote contingency provided for.

As to the inquiry whether she can make a lease, and whether the lessee would have an estate, and what kind of an estate, we say the execution of a power often results in an estate in the person technically called the appointee. The estate comes not from the donee, but from the donor, and the appointee is in by the original instrument conferring the power, in the same manner as if his name had been inserted in it. Hence, if a lessee from Mrs. Batchelder would have an estate of some kind, it would come not from her, but from Mrs. Elliot's will. We say, however, that she cannot do anything whereby the income or property can be taken, given away, or sold. by anticipation. She may do whatever is necessary to enable her to use the property, or to derive an income from it; but the income will not be hers until it accrues.

Have the trustees a right to call for a conveyance before the death of Mrs. Batchelder? They would have no occasion to call for it after that time. If they may not call for it before, an entire clause, which apparently was inserted for some object sufficient to

warrant its careful insertion, becomes nugatory. "Effect is to be given to every part, if possible." *Hall* v. *Hall*, 27 N. H. 278. "No implication can be made that will cancel any clause of the will, which, without it, admits of a reasonable interpretation." *Dennett* v. *Dennett*, 43 N. H. 501. "And while the whole context is to be taken together, the last clause or branch of a clause is deemed to show the intention with more certainty than a prior one." *Sheafe* v. *Cushing*, 17 N. H. 508.

The clause under consideration closes the subject of bequests, and is as follows: "As soon as said trustees shall have been chosen and the board is full, my executor or administrator is hereby authorized to convey to said trustees all the remainder aforesaid." What is this "remainder"? After providing for the support of Mrs. Batchelder out of the whole estate, the will says, "Subject to such right of disposal and of support, etc., all the estate which I may have at my decease after the payment of my just debts, and expenses of administration and the erection of a suitable monument at my grave in the lot herein after mentioned, I give, bequeath, and devise as follows, to wit:"

1st. To the First Congregational Society, the parsonage, etc.

2d. To said church, two thousand dollars, etc.

3d. To the city of Manchester, two thousand dollars, etc.

4th. To my cousin, one thousand dollars, etc.

5th. The portrait of my first husband to his brother, etc.

6th. All the remainder of my estate, of every description, for the establishment and maintenance of a hospital, etc.

Her mother's support and right of disposal is in the nature of a charge upon the whole, and the whole, subject to this charge, is divided into six unequal parts which are numbered consecutively, and the "remainder" is what remains after the five preceding devises and bequests. It is not a remainder after a life estate, for there is no life estate, so far as relates to this question, but the remainder after the preceding gifts, and it constitutes the principal part of the whole. The incumbrance rests upon the whole, in the sense that the whole must be taken if necessary, but any appropriation of any part of the principal will come from the 6th portion, in favor of the other specific gifts, and upon the personal estate belonging to that share, in favor of the real estate. *Leach* v. *Noyes*, 45 N. H. 364; *Williams* v. *Putnam*, 14 N. H. 540; *Wallace* v. *Wallace*, 23 N. H. 149.

The general rule is, that legacies are payable at the end of one year. By the will the board of trustees would be full at that time either by an election or by an appointment. And the will provides for a conveyance "as soon as the board is full," which would be at the end of one year at the farthest. Under such state of the law and provisions of the will, can the court doubt the object of this clause? It was inserted in order that the 6th share subject to the charge might not be withheld from the trustees. This was its

purpose, and we respectfully submit that no other possible explanation can be suggested for its careful insertion, and that if it is not carried into effect, the wishes of the testatrix are thwarted.

Where there are successive interests in the same property, the estate is not unfrequently left in the hands of the executor till the termination of the prior estates; and under this rule it might be supposed, if there were no other provision, that this large remainder would be so treated. But the rule is for the supposed advantage of the remainder man. It is for his sake that the rule is to be applied; and there is another rule, that a trust shall never be continued by implication beyond the time that is necessary for the purposes of the trust. *Ordway* v. *Dow*, 55 N. H. 16; *Doe* v. *Simpson*, 5 East 162.

By our statute a residuary legatee, when an executor, takes the estate upon giving bond for the payment of debts and legacies. There is the same reason, in the nature of things, when no executor is appointed. It is held in such a case that the residuary legatee shall administer. 2 Red. Wills 86, notes. Here there was no executor. There would be no trustees at the death of Mrs. Elliot. But there is a provision in the will for the contingency. The share to the hospital would be about five sixths of the whole estate, or more than forty-eight thousand dollars; and the charge upon it was not expected to exceed its income. The interest of Mrs. Batchelder in it is comparatively small, and it is not for the interest of the hospital that the whole estate should remain in the hands of the administrator for many years, merely on account of her right to the income. Why should it remain there if trustees, chosen as provided by the will to take care of it, deem it prejudicial to the interests committed to them? For whose sake is it to be kept there? The administrator's? Mrs. Batchelder's? She is not here asking for it. Her interests will be fully protected by a bond, if any bond were necessary. G. L., c. 195, s. 13, c. 204, s. 9; *Chesley* v. *Sherburne*, 56 N. H. 303, 305; *Healey* v. *Toppan*, 45 N. H. 262–264.

An inconvenience to her was suggested if she were obliged to look to more than one person for her income. If we are right that no estate in the land vests in the administrator, he has nothing to do with the rents. She may appoint him receiver of them, or any one else she chooses. By the codicil, the $2,000 given by the will to the church is to be paid to the society as soon as it will extinguish its debt, and Mrs. Batchelder will have no claim upon it. All the property which she uses, including the portrait, would remain in her possession as now. There is, then, only the legacy of $2,000 to the city, and $1,000 to Mrs. Moore and her descendants. And now is it expected that there shall be no conveyance to the hospital till after the death of Mrs. Moore, and the death of her son Albert, and the death of his children? If not, it is no objection to a call upon the administrator for the hospital share, that

he may not be able to divest himself of the whole administration without resigning his trust. If he must retain the $1,000, it can be no great hardship to retain the $2,000 which is to go to the city. The only inconvenience to Mrs. Batchelder would be in dealing with two parties instead of one. This was not deemed sufficient to prevent the insertion of the clause, and, as we submit, should not be deemed sufficient to prevent the carrying of it into effect whenever the trustees of the hospital shall deem it advisable.

It has been sufficiently shown, as we submit, that not an estate, but a power only, was given by the will to either Mrs. Batchelder or the administrator. The administrator, as administrator, holds the legal title to the personal estate in trust for the benefit of others; and a court of equity has full power over trusts of this description for the protection of tne rights of those interested. *Parsons* v. *Parsons*, 9 N. H. 309; *Perry* v. *Hale*, 44 N. H. 363; *Wheeler* v. *Perry*, 18 N. H. 307, 311, 312; Story Eq. Jur., ss. 532–534; *Walker* v. *Cheever*, 35 N. H. 339, 342, 345, 350, 351, and authorities cited.

The bond which the administrator gave obligated him to administer the estate according to law, to render to the judge of probate an account of administration upon oath within one year, and " to pay and deliver the rest and residue of the estate which shall be found remaining upon the account of such administrator to such person or persons respectively as said judge by his decree according to law shall limit or appoint." Nothing appears here to relieve the administrator from his obligation to account and pay over at the end of one year. There is indeed a naked power in a contingency, exceedingly unlikely to happen, to appropriate so much of the principal as shall be necessary for the support of Mrs. Batchelder. If this contingency could not be provided for short of keeping $50,000 in the hands of the administrator, the court of probate, upon a settlement of the account, might direct its retention. And so of Mrs. Batchelder's right (if she sees fit) to take and dispose of the income of the estate during her life. But these objects could be fully answered by a bond, as in *Chesley* v. *Sherburne* and *Healey* v. *Toppan*, if any bond were necessary. Even if he might be directed to retain the estate upon settling his account, that could afford no excuse for not settling an account. But in truth a court of probate, even if there were no provision in the will for a conveyance to the hospital, should not hesitate to direct one under the circumstances of this case, as the administrator holds the estate only in trust, and " the general rule is that a trust estate is not to continue beyond the period required by the purposes of the trust" (*Ordway* v. *Dow*, 55 N. H. 16), and those purposes may be fully secured without keeping this large estate out of the hands of the party ultimately entitled to the principal and contingently to portions of the income, that is to say, to so much of the income as Mrs. Batchelder does not "take and dispose of." It logically results that

a conveyance would be ordered at once, irrespective of the provision for one in the will.

In *Chesley* v. *Sherburne*, the court directed the conveyance by the trustees to the parties entitled to the principal, notwithstanding an annuity had been given to a sister of the testator, which by the will was to be paid out of the income, and a bond was taken to secure the annuitant. And so in *Healey* v. *Toppan* it was laid down that where a residuary bequest is made to one subject to the payment of an annuity, the annuity is a charge upon the property, and that before the property is delivered to the residuary legatee enough should be set aside the income of which would meet the annuity, or else the legatee should give the executor other sufficient security for the payment of the annuity. An executor who is a residuary legatee (if there is no widow, or the widow, there being one, accepts the provisions of the will) is required to give bond only to pay the funeral charges, debts, and legacies, and render an account of his proceedings therein when required. G. L., c. 195, s. 13. And "every person to whom any estate whatever of a person deceased shall be decreed to be set off, assigned, paid, or secured, shall, if required, give bond to the judge of probate, with sufficient sureties, to pay to the administrator, in default of other estates in his hand, his ratable proportion of the just demands with which the estate may be chargeable." G. L., c. 204, s. 9.

There can be no question, therefore (irrespective of the provision in the will), of the authority of the court to direct a transfer to the residuary legatee: the court has the right under its settled jurisdiction as a court of equity, and as the supreme court of probate. The rule of practice in the ecclesiastical courts in regard to selecting administrators with the will annexed, when there are different claimants, and the statute does not control the matter, is to take that person having the greatest interest in the effects of the deceased, unless there are other considerations of a controlling character. 2 Red. Wills 86, c. 3, ss. 9–11. But the fact that one of the claimants is the residuary legatee is a controlling consideration. The rule was early established, and is very inflexible, that administration will be granted to the residuary legatee, if there is no executor, or he has deceased. The foundation of the rule is as stated in *Thomas* v. *Butler*, that "it is reasonable that he should have the management of the estate who is to have what remains of it after the debts and legacies are paid;" and as stated in *Atkinson* v. *Barnard*, that the residuary legatee is the testator's presumed choice after the executor. And so unyielding is this rule, that the court will not allow a plea that there will be no residuum, for the court will not go into the inquiry. *Thomas* v. *Butler*, 1 Vent. 217–219; *Atkinson* v. *Barnard*, 2 Ph. Ecc. 316. And it has recently been held in the English court of probate that the universal legatee under the will must be treated the same as the residuary legatee, as to the right to take administration. See

cases cited in 2 Red. Wills 86, note 6.  And so in a case admitting of a suit by a residuary legatee or an executor, and suits by both being pending for the administration of the same estate, the proceedings in the executor's suit will be stayed, and a decree made in the residuary legatee's suit.  Dan. Chan. 798, and cases cited.  The substantial basis of this right of a residuary legatee to administer is that stated in *Thomas* v. *Butler*, that it is reasonable that he should have the management of the estate who is to have what remains of it after the debts and legacies are paid.  This right is even more apparent in reason and justice when, as in the present case, the residuary legatee is to take almost the entire estate.  To allow such a legatee to be kept out of the management of the estate for a series of years, he being able and willing to give ample security for the protection of the comparatively small interests of the other legatees, would be unjust.

At the death of Mrs. Elliot, the residuary legatee had as yet no legal existence, and it was necessary that administration be granted to some one other than the residuary legatee ; and the appointment of the plaintiff, upon the recommendation of the next of kin, was in accordance with the statute.  But it is not in accordance with the statute, or reason, or justice, that the whole estate shall be kept in the hands of the administrator, as it is.  The statute says that an administrator shall settle an account at the end of one year, and pay over the balance in his hands to such person or persons as the judge by his decree, according to law, shall limit and appoint; and if that had been done in this case, reason and justice would require a decree by the court of probate to transfer the property to the party entitled to the residuum, and which is almost the whole principal, so that it could have "the management of the estate."

There would be much stronger reasons for this course than existed in the cases cited from our reports, where such a course was taken, or than usually exists.  In the present case, not only can the right of Mrs. Batchelder not exceed the income (except in a contingency for the happening of which there is not one chance in ten thousand), but she herself, from her advanced age and other infirmities, is utterly incapable of managing the estate, and may be easily imposed upon or influenced in a manner prejudicial to the interests of the residuary legatee.  Mrs. Elliot's will, with intelligent purpose, withheld a life estate, and gave instead a mere power "to take and dispose of," in order that so much of the income as she should not take and dispose of should go to the hospital, which was the charity for which she designed the bulk of her estate. With no settling of an account, and no accounting, and no means of knowing how much or how little of the income is actually taken by her, what possible security can the hospital have in a settlement ten years from now against fictitious receipts, or against influences from which she may have been induced to take and appropriate, to

the prejudice of the hospital, what she would not have taken if left to herself? This danger is beside and beyond that which always exists of the loss of the principal, from mismanagement or otherwise. It is no answer to say that the court regard the administrator as an honorable man, and his bond as sufficient. All administrators are presumed to be honorable and responsible, else they would not be appointed. All this, if true, is no reason why the estate in this case, more than in any other, should be withheld from the possession and management of the party principally interested, after the time prescribed by the statute for settling the account.

Doe, C. J. Whether Mrs. Batchelder has an estate or a power, the rights of all interested parties make a proper case for the exercise of the administrator's authority to convey to the hospital (after settling his account in the probate court), when a sufficient bond is given, running to him and his official successors, or to the judge of probate, for the security of all who may need it. *Healey* v. *Toppan*, 45 N. H. 243. The form of the decree, conveyance, and security will be determined at the trial term.

*Case discharged.*

Smith and Clark, JJ., did not sit: the others concurred.